WILLIAM SALVÁ MATOS and GLORIA ESTHER RODRÍGUEZ, ETC., Plaintiffs and Appellants, v. ARTURO DÍAZ CONSTRUCTION CORP. ET AL., Defendants and Appellees.

No. R-65-64.     Decided April 5, 1968.

A. Mieres Calimano for appellants. Vicente Santori Coll for appellees.

Second Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

William Salvá Matos and his wife, and their minor child, plaintiffs-appellants herein, lived at No. 1014 10th Street of Villa Nevárez Development. They had lived there for 8 or 9 years in their own house. The patio of the house is bounded on the back by the Quebrada Margarita which runs through the development. In the same manner other patios of other houses were bounded by said brook.

The father, William Salvá Matos, who testified that he was a civil engineer, built a 5-foot fence of concrete columns and six-inch blocks on the back boundary of his patio, in order to have protection against the aforementioned brook whose bed was at a lower level of some eight feet. There was a depression there. The land through which the brook ran and which belonged to the municipality was 35 to 40 feet wide.

In 1963 the appellee corporation performed certain works to alter the bed of said brook. It dug so close to appellants' property, with its mechanical equipment, that it destroyed the aforementioned protective fence, which sank to the bottom. Three or 4 days after the fence collapsed, on July 7,

1963, the 10-year-old minor appellant was walking in the patio of his house at the edge of the boundary, he slipped on a rock and fell 10 feet down to the bottom of the brook. The boy received physical injuries to which we shall refer further on. There is evidence in the record that the father complained to the supervisor of the construction about the destruction of the fence, two days before the accident occurred. There is evidence in the record that the father warned the minor, after the fence collapsed, not to come near the place.

This is a petition to review the judgment which dismissed the complaint filed by the parents of the minor and by the minor against appellee in a suit for damages for the injuries and physical pains suffered by the minor as a result of the accident, and for the mental anguish and tortures suffered by the parents, and for recovery of expenses.

The trial court found proven the following facts:

(2) "The patio of said minor plaintiff's residence was bounded by the Quebrada Margarita and the codefendant, Arturo Díaz Construction Corporation, was performing the canalization of said brook. On July 4, 1963, said codefendant, in the process of performing the aforementioned work, which was unquestionably of great use for the general welfare of that community, dug into the boundary of the patio where said minor plaintiff lived, thus causing a fence located there to collapse, and forming a cliff of approximately ten feet high."

(3) "On July 7, 1963, the minor plaintiff, Cándido Alberto Salvá Rodríguez, while alone in the patio of his house, began to walk by the edge of the cliff, and when he stepped on a rock located at said edge, he slipped and fell down the cliff suffering various bodily injuries. At the time said accident occurred said minor plaintiff was acquainted, for more than a week, with the nature of the canalization being performed in that area by codefendant, Arturo Díaz Construction Corporation, and he was acquainted with the cliffs which had been formed in other areas alongside the edge of the brook by the removal of earth made by the tractors located within the brook, and which cliffs were similar to the one which existed in the patio of his residence.

The father of the minor plaintiff had warned him, three days before the accident, not to come near the cliff located in the patio of his house because something could happen to him."

(4) "At the time of the accident the minor plaintiff, Cándido Alberto Salvá, had full knowledge of the situation which existed in the area of the patio of his residence, and he had the intelligence and experience which enabled him to appreciate said situation and the danger involved in acting in the manner he did. In view of that capacity, discretion, knowledge and experience, said minor plaintiff acted negligently, and that negligence was the only cause of the accident."

The trial court also concluded that the minor plaintiff was 10 years and 10 months old when the accident occurred, that he was going to complete the sixth grade in La Merced school and he maintained an average grade which fluctuated between B and B+. That he played baseball, basketball, and he used to ride a bicycle, all of which he did in a recreation park located in the development where he lived.

The court concluded as a matter of law that if the co-defendant, appellee herein, were made liable for the injuries suffered by the minor, it must be based on the fact that said injuries were reasonably foreseeable and that the consequences of a negligent act which must be foreseen are the ones included within the probabilities and not within the possibilities, and that one is liable only for the probable results or "the ones which can be anticipated or foreseen" but not for those which are merely possible. The trial court concluded, after expressing itself about the capacity a boy has to appreciate danger, that because of the intelligence, knowledge, and experience of the minor plaintiff, the latter must have understood the existing situation when the accident occurred, and he could fully appreciate the risk "involved" by walking on the edge of the cliff which had been formed on the boundary of the patio of his house.

As a matter of law, it seems to us that the judgment appealed from demands too much of the minor's pru-

dence and foresight, and too little of the defendant corporation's prudence and foresight. Our positive law states that no one shall be liable for events which cannot be foreseen, or which having been foreseen are inevitable. Civil Code (1930) § 1058. And see § 1043. In its usual and common meaning "to foresee" is to see with anticipation, to guess what is going to happen.[1] It means to provide against, to anticipate or to avoid an injury or danger. Foreseeability, according to Cabanellas, is an element characteristic of fault, consisting of the possibility of foreseeing the damaging results of the action not effectively foreseen in the case involved.[2] It requires prevention, adoption of security measures to avoid as much as possible the actual dangers. In its usual and common meaning foresight, the act of foreseeing, is the act of providing what is necessary to attend to foreseeable risks or necessities, that is, to attend to that which is susceptible of being foreseen.

The corporation should have foreseen the fact, clearly foreseeable, that if it eliminated the wall which was a protection against falling down the cliff, it was possible and probable that a child could fall down there, especially when in destroying the protection, the depression became more dangerous at a sudden fall, due to the excavation and cutting. Possible, because in eliminating the protection, a fall by that place could occur, and it was not a fact against the natural order of things, which is the impossible, but rather it was in the natural order of things, which is the possible. It was probable that it could occur because the brook passed through a typical development of adjacent dwellings, it passed through the patios of the residences in which children lived. Accepting the probable as a rule of the law of experience, of reasoning, and of life, as Barcia sets forth,[3] experience and reason-

---

[1] Julio Casares, *Diccionario Ideológico de la Lengua Española* (1959).
[2] Guillermo Cabanellas, *Diccionario de Derecho Usual.*
[3] Roque Barcia, *Gran Diccionario de Sinónimos Castellanos* (1950).

ing should have permitted defendant to anticipate that it was a feasible fact that the event could occur as against the children's natural sense of curiosity, and the natural limitation of the capacity of a child to discern or provide at the same time, against all that could happen.

█ The fault or negligence of the debtor consists of the omission of the steps which may be required by the nature of the obligation, and which may pertain to the circumstances of the persons, time, and place. Thus states § 1057 of the Civil Code.

Under the circumstances of this case, defendant committed error in failing to take the steps which said circumstances required, in not placing a fence or provisional protection in substitution of the one it had destroyed, or in not taking other precautions. In the quasi delict field, such steps as defendant should have taken were normally the proper ones in the environment of human togetherness. Judgment of the Supreme Court of Spain of October 20, 1950.

█ Negligence does not prosper as long as the person is diligent, and the damage is prevented, we stated in *Pereira* v. *Commonwealth,* 91 P.R.R. 728 (1965). As in the former, sense of foresight was lacking in the case at bar. See: *Santaella* v. *Licari,* 83 P.R.R. 855 (1961); *Ginés* v. *Puerto Rico Aqueduct and Sewer Authority,* 86 P.R.R. 490 (1962); *Pabón Escabí* v. *Axtmayer,* 90 P.R.R. 20 (1964); *Hernández* v. *Fournier,* 80 P.R.R. 94 (1957); *Weber* v. *Mejías,* 85 P.R.R. 72 (1962); *Ramos* v. *Sucesión J. Serrallés,* 51 P.R.R. 332 (1937).

In this *Ramos* case, an exhaustive study of Justice Córdova Dávila, we stated (p. 343): "If the owner of the property has grounds to anticipate the presence of children at the time he creates the dangerous condition, his duty is to adopt all due and reasonable precautions to avoid injury and save himself from liability. It does not matter if the

child is a trespasser. It is not necessary, therefore, that the dangerous condition should have induced him to enter upon the property. *It is sufficient that his presence could have been reasonably anticipated.*" We expressly accepted from the doctrine the rule that "if there was reason to anticipate the presence of children, it would make no difference how the child who was injured happened to come upon the premises."

In the case at bar the child was in the patio of his property, where he usually was. He had the right to use that patio. Although he was young, the record reveals that he was not performing any indiscreet act. He was not running or jumping on the edge. According to the record he slipped when he stepped on a small rock. In slipping the boy would not have fallen down the cliff, if it were not for the lack of care and precaution on the defendant's part in not substituting the protection, or in not taking any other safety measure.

From footnote 1 of our opinion of *Márquez* v. *Puerto Rico Telephone Co.,* 88 P.R.R. 416 (1963), we cite:

"[1] As stated by Castán, *Derecho Civil Español, Común y Foral,* Vol. 3, p. 146 (8th ed. 1954): 'The essence of the fault lies in the lack of diligence and foreseeability of the wrongdoer.'

"Barassi, cited by Santa María, *Comentarios al Código Civil,* Vol. 2, p. 947 (1956), speaks of the general duty of correctness and prudence imposed by the general necessity of orderly social living together toward the other citizens, and declares the act illicit in the extracontractual sense whenever it violates the general duties of social correctness or of correct conduct, which duties are not prescribed in the codes but which represent the logical minimum supposition of the order of social life, which concepts we also cited in *Ramos* v. *Carlo, supra.*"

■ Having already placed the lack of foresight of the corporation which gave rise to the injury, and its failure to exercise the care which it should have exercised under the circumstances therein, appellee is liable, even though it were proven that the child acted indiscreetly. As we stated in

*Ramos* v. *Carlo*, 85 P.R.R. 337 (1962), § 1042 of the Civil Code creates the obligation for illicit acts and omissions in which *any kind* of fault or negligence occurs. We said in this case (p. 350), "One who commits the culpable or negligent act or omission should always be liable, in such *measure* as may be required, but he shall not be exonerated completely." Citing Castán, we stated: "The wrongdoer is always liable for the damage, whether he has caused it deceitfully or through mere negligence and regardless of its degree, for even the slightest fault (1) is taken into account because this type of fault affects the relations of *social interest* rather than the private interest. (1) Hence, the Roman rule: '*In lege aquilia et levissima culpa venit.*'"

In conformance with the previous pronouncements, the judgment appealed from, which released defendant of all responsibility, must not prevail.

According to the evidence in the record, the minor fell on the hard rock in the bottom of the brook. The parties stipulated that the medical evidence would reveal a comminuted fracture of the extreme distal of the left radius, reduced to immobility with a plaster cast for a period of five weeks. It was necessary to operate on the boy with general anaesthesia. Permanent functional or anatomical changes or changes secondary to the fracture were not to be expected. In addition to the fracture of the arm, the boy suffered an intense hemorrhage in the region of the anterior teeth, and the loss of the molars and upper-left deciduous cuspid. The central and lateral upper-left permanent teeth were quite loose. The crown of the upper-right middle tooth had the left corner fractured. The gum was separated from the teeth and it was quite lacerated. It was necessary to set the gum and the teeth with sutures for two weeks. At the time of the examination, August 2, 1963, it was premature to make a final diagnosis. It was necessary to continue the radiographic observation for one or two years to secure the

complete recovery of the teeth which were affected by the injury.

There is evidence on the defendant's part to the effect that on August 4, 1964, the boy's mouth was examined without finding any permanent injury except a fracture at an angle with the middle right incisor. The teeth were firm and in their place. The record reveals that the father incurred hospitalization and treatment expenses for the sum of $254.

In the light of this evidence another judgment will be rendered fixing a compensation of $6,000 for the minor plaintiff for his injuries and physical pains; $1,000 for his parents for mental sufferings; $254 for recovery of expenses and $500 for attorney's fees before the trial court, amounts which appellee must satisfy.